UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

**JHONNY HOMERO PALAG PACA,**

Petitioner,

– against –

**RAUL MALDONADO JR.**, in his official capacity as Warden, Metropolitan Detention Center; **JUDITH ALMODOVAR**, in her official capacity as Acting New York Field Office Director for U.S. Immigration and Customs Enforcement; **MARKWAYNE MULLIN**, Secretary of the Department of Homeland Security; **TODD BLANCHE**, Acting Attorney General,

Respondents.

--------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

26-CV-6598 (AMD)

**ANN M. DONNELLY**, United States District Judge:

In October, 2026, U.S. Immigration and Customs Enforcement ("ICE") officers arrested and detained the petitioner while he was driving his car in Queens. (ECF No. 1 ¶ 1; ECF No. 5 at 4; ECF No. 5-2 ¶¶ 10–11.) He is currently detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. (ECF No. 1 ¶ 22; ECF No. 5 at 6; ECF No. 5-2 ¶ 17.) The petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. (ECF No. 1 ¶¶ 9–10.) The Court grants the petition, as explained below.

## BACKGROUND[1, 2]

The petitioner, a native and citizen of Ecuador, entered the country in the summer of 2021, and was detained near the border and released. (ECF No. 1 ¶ 1; ECF No. 5 at 4; ECF No. 5-2 ¶ 4; ECF No. 5-3 at 2.)[3] The petitioner then went to live in the Bronx with his minor daughter, worked in construction, and paid taxes regularly. (ECF No. 1 ¶ 6.) In March 2022, the Department of Homeland Security ("DHS") issued the petitioner a Notice to Appear ("NTA"), but in 2023, an Immigration Judge ("IJ") dismissed his removal proceedings. (ECF No. 5 at 4; ECF No. 5-2 ¶¶ 5–6.) In May 2026, the New York City Police Department arrested him for driving while intoxicated. (ECF No. 5 at 4; ECF No. 5-2 ¶ 7; ECF No. 5-4 at 2–4.) The same day, ICE issued an I-200 warrant for his arrest but did not serve it on him or detain him. (ECF No. 5 at 4; ECF No. 5-2 ¶ 8; ECF No. 5-5 at 2.) According to the warrant, the immigration officer determined that there was probable cause based on "the execution of a charging document to initiate removal proceedings," "biometric confirmation" of the petitioner's identity, and evidence that he either lacked immigration status or was otherwise "removable under U.S. immigration law." (ECF No. 5-5 at 2.) In September 2026, the petitioner pled guilty to driving while intoxicated in violation of Vehicle and Traffic Law Section 1192(2), and is awaiting sentencing. (ECF No. 5 at 4; ECF No. 5-2 ¶ 9.)

[1] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits. *See Hyppolite v. Noem*, 808 F. Supp. 3d 474, 479 n.1 (E.D.N.Y. 2025); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 402 n.1 (S.D.N.Y. 2025).

[2] Having reviewed all the submissions, the Court finds that the petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. *Tumba v. Francis*, 813 F. Supp. 3d 394, 397 n.1 (S.D.N.Y. 2025); *see also* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require").

[3] The petitioner says he entered the country on June 15, 2021. (ECF No. 1 ¶ 1.) The government says he entered on July 22, 2021. (ECF No. 5 at 4; ECF No. 5-2 ¶ 4.) This disagreement is not material.

On the morning of October 9, 2026, ICE officers were doing neighborhood surveillance in attempt to find and arrest someone else. (ECF No. 5 at 4; ECF No. 5-2 ¶ 10.) At about 7:00 a.m., ICE officers spotted the petitioner in his car, searched his license plate, and discovered the outstanding I-200 warrant for his arrest. (ECF No. 5 at 4–5; ECF No. 5-2 ¶¶ 10–11.) They stopped the petitioner and took him into custody but did not show him the warrant. (ECF No. 1 ¶ 21; ECF No. 5 at 4–5; ECF No. 5-2 ¶¶ 10–11.)

An ICE officer interviewed the petitioner about his family and medical needs to determine whether he would be a flight risk or a danger to the community. (ECF No. 5 at 5; ECF No 5-2 ¶ 14.) An ICE officer then filled out two forms: a Form I-213, Record of Deportable/Inadmissible Alien, and a Form I-286, Notice of Custody Determination, the latter of which he served on the petitioner. (ECF No. 5 at 5; ECF No 5-2 ¶ 14, ECF No 5-7 at 2–5; ECF No. 5-8 at 2.) According to the government, ICE detained the petitioner because the ICE officer determined "that Petitioner failed to establish he did not pose a danger to persons or property" and "failed to establish he did not pose a flight risk." (ECF No. 5-2 ¶ 14.) The officer's reasoning does not appear in the record. The Notice of Custody determination lists the time of custody determination as 12:37 p.m. (ECF No. 5-8 at 2.) At around 2:56 p.m. ICE officers served the petitioner with an NTA and the I-200 warrant. (ECF No. 5 at 5; ECF No. 5-2 ¶ 12; ECF No. 5-6 at 2–4.) The petitioner is currently detained at the MDC. (ECF No. 1 ¶ 22; ECF No. 5 at 6; ECF No. 5-2 ¶ 17.)

## LEGAL STANDARD

A district court may "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to

hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

In seeking a writ of habeas corpus, the petitioner alleges that the government violated the INA, 8 U.S.C. § 1226(a), and the petitioner's procedural and substantive due process rights under the Fifth Amendment. (ECF No. 1 ¶¶ 57–71.)

Section 1226(a) states in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General —
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on —
>
> > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > (B) conditional parole.

8 U.S.C. § 1226(a). "In short, to arrest and detain a noncitizen lawfully under Section 1226(a), the government must do two things: (1) get a valid warrant . . . and (2) make an individualized custody determination, before or contemporaneous with the arrest, about whether detention is appropriate based on an assessment of danger and flight risk." *J.G.G. v. Genalo*, No. 26-CV-5027, 2026 WL 2547110, at *3 (E.D.N.Y. Aug. 28, 2026) (*citing Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018); *S.G.V. v. Genalo*, No. 26-CV-2893, 2026 WL 1492770, at *1 (E.D.N.Y. May 28, 2026)).

The petitioner alleges that the warrant DHS used to justify his arrest was invalid under 8 C.F.R. § 236.1 because ICE issued it before issuing the NTA. (ECF No. 1 ¶¶ 4, 29–31; ECF No. 6 at 2–3.) The government maintains that the arrest was valid because ICE arrested him pursuant to a warrant. (ECF No. 5 at 6.) In any event, the government says, the petitioner is not entitled to release, because the error did not implicate his fundamental constitutional or statutory rights. (*Id.* at 9 n.4.)

8 C.F.R. § 236.1(b)(1) provides that a noncitizen "may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest" "[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b)(1); *cf. Abel v. United States*, 362 U.S. 217, 232–33 (1960) (describing the implementing regulations of the INA that govern the authority to issue administrative warrants). Courts in this district have concluded that an "I-200 cannot be used to effectuate an arrest *before* an NTA has been issued." *Yeleshev v. Larocco*, No. 26-CV-2294, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026) (emphasis in original); *see also J.G.G.*, 2026 WL 2547110, at *3–4 (concluding an I-200 warrant was improper when issued before a valid NTA); *Okeke v. Maldonado*, No. 26-CV-2714, 2026 WL 2056904, at *4–5 (E.D.N.Y. July 16, 2026) (concluding that ICE had no authority to arrest the petitioner pursuant to an I-200 warrant when ICE issued and served the NTA eleven hours later); *Parada Cruz v. Mullin*, 837 F. Supp. 3d 404, 419–422 (E.D.N.Y. 2026) (collecting cases); *Meza v. Francis*, No. 26-CV-2722, 2026 WL 1734903, at *2–3 (E.D.N.Y. June 16, 2026); *Arango v. Genalo*, No. 25-CV-6720, 2025 WL 3637500, at *2 (E.D.N.Y. Dec. 16, 2025). In short, "the regulations require that removal proceedings are pending or at least that a Notice to Appear was served at the time of arrest." *Aparicio v. Genalo*, No. 26-CV-1411, 2026 WL 698872, at *5 (E.D.N.Y. Mar. 12, 2026). "The NTA begins the removal process, and at that

time or after its issuance, the [g]overnment can then effectuate [an individual's] arrest, and, if necessary, detention, until removal proceedings are completed." *Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 157–58 (2021)).

ICE did not issue a valid NTA before it arrested the petitioner under the I-200 warrant. Officers arrested him at around 7:00 a.m. on October 9, and issued the NTA almost eight hours later at around 3:00 p.m. (ECF No. 5-2 ¶¶ 10–12.) The government argues that "the determination of where the alien can be detained, and by extension, where the removal proceedings will be docketed, is made during post-arrest processing where the alien's risk-classification is determined, pedigree information, as well as any medical issues, or other detention-related consideration, can be assessed, and bedspace approved by a detention facility," so, therefore, "ICE generally issues these NTAs during post-arrest processing." (ECF No. 5 at 5–6; ECF No. 5-2 ¶ 13.) Because the regulation requires ICE to issue a valid NTA before an arrest, *see* 8 C.F.R. § 236.1(b)(1), it does not matter what ICE "generally" does. The statute describing NTAs also assumes that DHS can issue an NTA for someone who is not in custody, as it provides for service by mail and includes procedures for noncitizens to update their addresses from afar. *See* 8 U.S.C. § 1229(a)(1).

In any case, ICE does not "generally" need to hold a noncitizen in custody to complete the NTA. DHS routinely issues valid NTAs to noncitizens who are not in custody. *See, e.g.*, *J.R.U. v. Genalo*, No. 26-CV-4332, 2026 WL 1864975, at *1 (S.D.N.Y. June 29, 2026) (DHS "issued a[n] . . . [NTA] to him by mail, charging him as removable."); *Rueda Torres v. Francis*, No. 25-CV-8408, 2025 WL 3168759 at *1 (S.D.N.Y. Nov. 13, 2025) (when petitioner "reported to the ICE office in Newark, New Jersey[ s]he was served with two documents: (1) a Form I-200

warrant for her arrest and (2) [an NTA] charging her as removable and ordering her to appear before an Immigration Judge in Newark"); *Turcio v. Noem*, No. 25-CV-05941, 2025 WL 2124129, at *1 (S.D.N.Y. July 29, 2025) (in December "ICE served Petitioner, by mail, with a[n] . . . NTA . . . On April 8, 2020, ICE . . . fil[ed] the NTA with the Executive Office for Immigration Review. . . On April 9, 2020 the immigration court mailed a notice of the hearing to Petitioner."). In this case, ICE could have easily mailed the petitioner the NTA or handed it to him when they stopped his car on October 9th.

To the extent that *Ramirez v. Genalo*, No. 26-CV-3229, 2026 WL 1815771, at *3–4 (E.D.N.Y. June 24, 2026), which the government cites (*see* ECF No. 5 at 6), stands for the position that DHS may issue an NTA during post arrest processing, the Court respectfully disagrees with that reasoning. "There is no 'leeway'" in the text of 8 C.F.R. § 236.1(b)(1); ICE may only arrest a noncitizen "at the time" or after the NTA is issued. *Parada Cruz*, 837 F.Supp.3d at 409; *see also J.G.G.*, 2026 WL 2547110, at *4. "If ICE wants to use a warrant, it must have a valid NTA in place." *Parada Cruz*, 837 F.Supp.3d at 409; *Yeleshev*, 2026 WL 1353806, at *2 ("Although the time frame between the issuance of the arrest warrant and the issuance of the NTA here was relatively short, the law nonetheless does not permit what occurred."); *Meza*, 2026 WL 1734903, at *2 ("But even accepting that the time frame between the issuance of the arrest warrant and the issuance of the NTA was relatively short, there is no leeway; if ICE wants to use a warrant, it must have a valid NTA in place." (citation modified)).

"[I]f a Form I-200 Warrant is without effect, it cannot serve as the predicate 'warrant issued by the Attorney General' necessary to justify arrest and detention under Section 1226(a)." *Okeke*, 2026 WL 2056904, at *4 (quoting 8 U.S.C. § 1226(a)). Therefore, "'when ICE arrested [the petitioner] they had no authority to do so,' and the law 'does not permit what occurred,'"

*Meza*, 2026 WL 1734903, at *2 (first quoting *Gopie*, 2025 WL 3167130, at *1; and then quoting *Yeleshev*, 2026 WL 1353806, at *2).

The Court also respectfully disagrees that the rule requiring ICE to issue the NTA before issuing a warrant and before arresting someone is merely a sequencing rule, not tied to any fundamental rights. (*See* ECF No. 5 at 9 n.4 (*citing Gagea v. Maldonado*, No. 26-CV-4817, 2026 WL 2859032, at *2 (E.D.N.Y. Sept. 23, 2026)).) The *Gagea* court asserts that a "petitioner is not entitled to release from custody . . . without a showing of prejudice" when authorities violated a "sequencing rule" that was not "promulgated to protect a fundamental right." *Gagea*, 2026 WL 2859032, at *2 (citation modified). In the Court's view, the rule does protect a fundamental right — it ensures that "[p]olice and law enforcement cannot operate as roving bands, detaining individuals, figuring out the reasons later, and papering over their failures afterwards." *Parada Cruz*, 837 F.Supp.3d at 412; *see also Arango*, 2025 WL 3637500, at *2–3 (concluding that "[b]ecause [the petitioner] was not served with a NTA [until] *after* her arrest, her due process rights were violated," and ordering release from custody); *Lojano Tigre v. Jamison*, No. 26-CV-7562, 2026 WL 3093160, at *1 n.1 (E.D. Pa. Oct. 14, 2026) (granting noncitizen's request for release after warrantless arrest because "the requirement that the [g]overnment follow" Section 236.1, among other "regulations[,] guards against arbitrary deprivation of his liberty."). That is essentially what happened in this case. ICE officers came across the petitioner while they were looking for another person. (ECF No. 5 at 4; ECF No. 5-2 ¶ 10.) They arrested him without a valid warrant.

Accordingly, because ICE violated Section 1226(a) and the Fifth Amendment,[4] the Court grants the petitioner the "typical remedy" for "unlawful executive detention" — "release."

---

[4] The petitioner also argues he was denied procedural due process because he received no individualized determination before being arrested and detained, his eventual custody determination improperly

*Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) ("[T]he traditional function of the writ [of habeas corpus] is to secure release from illegal custody;" it is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it."); *Okeke*, 2026 WL 2056904, at *6 (ordering release after finding that ICE unlawfully executed an I-200 warrant before issuing an NTA); *Yeleshev*, 2026 WL 1353806, at *8 (ordering release based on "two independent bases to grant the writ — the failure to initiate removal proceedings before or at the time of effectuating [the petitioner's] arrest, and the use of an I-200 arrest warrant that was legally invalid.").

---

occurred more than five hours after he was detained, and the custody determination was inadequate. (ECF No. 1 ¶¶ 32–51; ECF No. 6 at 4–6.) The government disagrees, arguing that ICE performed an individualized custody determination soon after his arrest, and this review satisfied § 1226(a). (ECF No. 5 at 7.) The Court finds that the petitioner is entitled to release because DHS arrested him unlawfully, and does not address the sufficiency of the custody determination because the violation of 1226(a) is a "dispositive and independent basis to grant the writ." *Gopie*, 2025 WL 3167130, at *1; *see also Okeke*, 2026 WL 2056904, at *6 ("Respondents argue that they have complied with the custody determination procedures required by Section 1226(a) and thus are permitted to continue to detain him. . . But since the Court has found the arrest was unlawful to begin with, it could not have triggered Respondents' detention authority under Section 1226(a), and thus Respondents' authority to continue to detain Petitioner without a bond hearing is irrelevant.").

The government argues that the petition should be dismissed because the petitioner failed to exhaust his administrative remedies. As in *J.G.G.*, the Court finds that "'[e]xhausting administrative remedies does nothing to cure a procedurally defective arrest. Accordingly, it is not necessary that petitioner seek a re-determination of custody by an immigration judge prior to seeking habeas relief from this Court.'" 2026 WL 2547110, at *5 n.7 (quoting *Meza*, 2026 WL 1734903, at *3).

## CONCLUSION

For these reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 1), is granted.

The government is directed to release the petitioner from custody immediately and within 24 hours of this Order. The government must return to the petitioner any and all funds and/or property that were seized from the petitioner at the time of arrest. The government is directed to submit a letter to the Court certifying compliance with this Order within 48 hours of this Order. The Court further orders that the petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a). This order includes "an injunction barring deprivation [of any] of the [petitioner's] rights without the requisite procedural protections." *Khabazha v. U.S. Immigr. & Customs Enf't*, 25-CV-5279, 2025 WL 3281514, at *8–9 (S.D.N.Y. Nov. 25, 2025) (ordering that the government release the petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements" and return him to the "status quo ante."). The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

**SO ORDERED.**

s/ Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
November 5, 2026